For the errors above discussed, the judgment of the trial court is reversed, and the cause remanded.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals, and approved by the court.

---

### CALVIT v. RAY.   (No. 3149.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 25, 1926.)

l. Partnership ⬅78.

Personal appropriation of partnership goods by a partner creates, in absence of contrary agreement, a partnership claim against him.

2. Partnership ⬅327(3)—In suit for accounting, appropriation of partnership goods for personal use by one partner must be pleaded by the other if he seeks relief therefor.

In suit for partnership accounting, where one seeks to recover on or use as an offset a claim due from the other for partnership property appropriated, without an agreement in that behalf, for personal use, he should have pleaded it.

3. Partnership ⬅328(3)—Evidence held sufficient to show a tacit agreement that one partner might appropriate partnership goods to supply living expenses.

In a suit for a partnership accounting, evidence *held* sufficient to show a tacit, if not express, understanding that one partner might consume such goods as were needed to supply his living expenses.

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Suit by F. J. Ray against J. H. Calvit, to recover an interest in partnership property and for an accounting. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

King, Mahaffey & Wheeler, of Texarkana, for appellant.

W. W. Arnold, of Texarkana, and Johnson & Waters, of New Boston, for appellee.

HODGES, J. This suit was filed in the district court of Bowie county by the appellee, Ray, to recover of the appellant an interest in certain partnership property, and incidentally asking for an accounting. Appellee pleaded, in substance, that on or about the 12th of February, 1919, he and the appellant entered into a copartnership agreement, for the purpose of carrying on a mercantile business in Bowie county, which continued until on or about the 29th of December, 1923, when it was dissolved by mutual consent. In the formation of the partnership it was agreed that each of the parties was to contribute one-half of the capital stock and to share equally in the net profits. The appellee was to conduct the business and perform all of the clerical labor. In addition to one-half interest in the profits, he was to receive $1 per day for his services. At the time of the dissolution the appellant was indebted to the partnership for goods, wares, and merchandise sold to appellant's tenants amounting to the sum of $888.82. The joint property then consisted of $582.79 in cash on deposit in the First National Bank of De Kalb, merchandise valued at $946.30, and three head of cattle of the aggregate value of $30. The appellee asked for judgment for the division of the property and for his half interest in the net proceeds, together with the sum of $86 due him as the value of his services.

The appellant answered by exceptions and a general denial. He specially denied that·

there was any agreement to allow the appellee $1 per day for his services. He admitted that he owed the partnership an indefinite amount of money for goods advanced to his tenants, and also admitted that upon the dissolution of the partnership he took charge of the goods then on hand. He alleged that the appellee kept the books of the concern, and asked that he be required to render an account showing the receipts and disbursements, and what amount, if any, he had withdrawn from the stock during the time it was under his management. Appellee filed no reply to this prayer for an accounting.

Before trial upon the merits the court appointed a master in chancery, who heard the evidence and stated the account between the parties. The master filed a report showing that there was a deposit in the First National Bank of De Kalb of $582.84 due the partnership; that the appellant was indebted to the partnership in the sum of $268.36; that the appellee was entitled to $1 per day for 86 days; that the cattle had been lost, and their value was ignored. After balancing accounts he found that appellant owed the appellee $562.78. That report was filed, but on the trial the court again heard the evidence. He adopted the findings of the master, and rendered judgment in favor of the appellee for $562.78.

The objection to the report of the master and to the judgment rendered by the court is that there was failure to charge the appellee with the value of goods taken out of the stock by him for personal use during the time he was conducting the business. Ray testified that he did take from the stock groceries to the value of about $5 per month, which he consumed in living. Some other articles were also taken for clothing. He testified, over the objection of the appellant, that it was agreed that he (Ray) should have his living out of the store. This testimony was objected to upon the ground that Ray had not pleaded any such agreement.

[1-3] We are of the opinion that there is no reversible error in the admission of the testimony or in the conclusion reached by the trial court upon that issue. Neither party referred to those transactions in his pleadings. An appropriation of the partnership property by Ray for his own personal use would, in the absence of an agreement to the contrary, create a claim against him in favor of the partnership. Such a claim would constitute a part of the assets of the concern, to be taken into consideration in the final division of the property. If the appellant wished to recover anything on that account or to have that debt against Ray applied as an offset to the claims of Ray against him, he should have pleaded it. Since both parties ignored it the master was also justified in not taking it into consideration in stating the final account.

Moreover, the appellant himself, after detailing the negotiations between himself and Ray prior to the formation of the partnership said:

"I said 'over and above your living out of the business' to 'keep every dollar the place makes, and I will throw every bit of business I can to the place'; and I did so, and paid every dollar that was there; and it went on, and there was never anything said about this $1 per day, until last fall, in August or September, he said, 'You know, we had better settle up.'"

Again he testified as follows:

"Q. When you went into this business you were equal partners, and Mr. Ray was to run the business. What was he to get for running the business? A. Not a penny; wasn't a thing said about it. I looked at it this way: Mr. Harris (the former partner of appellant) lived out of it while he had it. Yes; I knew this man here was living out of it.

"Q. Did you agree for him to have that for running the business? Answer: It was plumb agreeable with me for him to have it, because he was looking after the business, but there was nothing said about the charges. I didn't object to him living out of it, because he had to have a living."

It appears from this testimony that there was a tacit, if not an express, understanding that the appellee might consume such goods as were needed to supply his living expenses.

The judgment will therefore be affirmed.